HULDA LINDQUIST, Appellant, v. S. S. KRESGE COMPANY, a Corporation and DANIEL K. PATRICK.—136 S. W. (2d) 303.

Division One, January 23, 1940.

*S. H. Goldsmith* and *Johnson, Garnett & Quinn* for appellant.

*Roger C. Slaughter* and *Henry L. Jost* for respondents.

GANTT, J.—Action to recover $15,000 for personal injuries. Plaintiff sustained injuries while descending a stairway in defendant company's store. Defendant Patrick was manager of the store. An involuntary nonsuit was taken by plaintiff as to Patrick, and the

jury found in favor of the company. The court overruled plaintiff's motion for a new trial, but made no order with reference to plaintiff's motion to set aside the nonsuit. Unaware of the failure to rule on the motion to set aside the nonsuit, plaintiff took an appeal, which is docketed as No. 35,255. Later the motion to set aside the nonsuit was overruled and an order of dismissal entered. Plaintiff appealed from said order, which is docketed as No. 36,713. The appeals have been consolidated, and the cause is for consideration on the order overruling the motion for a new trial and the order of dismissal following the overruling of the motion to set aside the nonsuit.

In substance, the petition alleged that the defendants negligently permitted the stairway steps to become worn, uneven, smooth, slick and slippery, and negligently permitted the stairway to be so "dimly and improperly lighted" that persons using the same could not, by the exercise of ordinary care, discover that the steps were worn, uneven, smooth, slick, slippery and dangerous.

On overruling the motion for a new trial and the motion to set aside the nonsuit, the trial judge stated that the verdict was for the right party and that the court erred in refusing to direct a verdict for both defendants at the close of all the evidence. We construe the statement to mean that the trial judge was of the opinion that a verdict should have been directed for both defendants and for that reason "the verdict was for the right party".

Plaintiff assigns error on certain instructions and assigns error on the refusal of certain testimony as evidence in the cause. Even so, said assignments are not for consideration if a verdict should have been directed for defendants.

The facts for consideration on demurrer follow: Defendant company owned and operated a retail store in Kansas City, Mo. On the east side of the storeroom a wide stairway extends upward and eastward to a landing ten feet wide and twenty-two feet long. From this landing two separate stairways extend upward and westward, one from the north side of the landing and the other from the south side of the landing. The stairways are of Tennessee and Alabama marble— materials commonly used in public buildings. They had the usual "hone finished" steps, which are neither slick, polished nor slippery. It is a smooth and standard finish for marble steps. Appropriate hand rails are on each side of the stairways. The steps were worn by constant use. The heavy traffic is adjacent to the handrails, which caused that part of the step in question to be worn or "cupped out" five-eighths of an inch, as shown by actual measurement. Constant use tended to increase the smoothness of the steps.

Over the landing are three electric lights with frosted globes about twelve inches in diameter. They are about twenty-five feet from the landing floor. On the second floor the lights are over the counters.

In the south wall of the building are large windows located near the landing.

At 11:30 A. M. on February 21, 1934, plaintiff and her daughter went to the store as prospective customers. After "shopping" on the first floor for ten minutes they ascended the stairway to the landing and proceeded westward up the stairway to the second floor. After looking about on said floor for fifteen minutes they proceeded on the south side of the south stairway to the landing. The daughter preceded the plaintiff down the stairway. Plaintiff's right foot slipped on the fourth step from the top, which caused her to fall. The daughter assisted her to a sitting position on the step.

Plaintiff testified that while sitting on the step she noticed that it was worn, uneven, slick and tan colored; that she also noticed the three lights over the landing and the lights over the counters on the second floor; that the counter lights did not directly light the stairway but gave a shadowy light; that the lights over the landing were covered by frosted globes about twelve inches in diameter and "gave a dim light;" that she had no "difficulty in getting around for lack of light;" that she had been in the store as a customer three or four times a year for three or four years prior to her injury; that on the day in question she ascended to the second floor over this particular stairway; that at the time she weighed 184 pounds and was wearing shoes with two inch heels.

The daughter testified that after the injury she examined the step; that it was slick, smooth and "worn about an inch at the deepest part;" that she noticed the lights over the landing were covered with frosted globes, and noticed the lights over the counters on the second floor; that the lights over the landing were "dim;" that the lights over the counters did not directly light the stairway; that while descending, the body shades the light from the second floor; that she had been "shopping" in the store quite a number of times each year for a period of eight years prior to the injury; that on those occasions she went to the second floor by the stairway; that she noticed no change in the lights during that time; that "because it was dark" she had difficulty in finding the "things" dropped from her mother's hand bag at the time the mother fell; that the "darkness" had not occurred to her prior to the injury; that she could see very plainly going about the stairway and had no difficulty getting about the store; that prior to the injury she had no occasion to think of either the lights or the steps; that the wire in the glass of the large windows near the stairway diminishes the light from the outside, but she could see the building across the alley.

The applicable rule is stated by a standard text as follows:

"The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons, even when he has

invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured, that a recovery is permitted. . . . And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." [20 R. C. L. 56, sec. 52.]

The rule is supported by decisions of this court as follows: Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Paubel v. Hitz, 339 Mo. 274, 96 S. W. (2d) 369; Ilgenfritz v. Mo. Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723; Mullen v. Sensenbrenner, 260 S. W. 982; Main v. Lehman, 294 Mo. 579, 243 S. W. 91; Cash v. Sonken-Galamba Co., 322 Mo. 349, 17 S. W. (2d) 927, Boyd v. Logan Jones D. G. Co., 340 Mo. 1100, 104 S. W. (2d) 348; Peck v. Yale Amusement Co., 195 S. W. 1033.

Confronted with the rule, plaintiff states that she seeks recovery on "a defective condition of the stairs *in combination* with improper lighting thereof."

It follows that the question on demurrer is reduced to a consideration of the testimony to determine if there was substantial evidence tending to show that defendants did not exercise ordinary care to provide sufficient light for customers using the stairway. In considering the question we ignore, as mere conclusions, the testimony of plaintiff and her daughter that it was "dark" and "dim." [Peck v. Yale Amusement Co., supra.]

Plaintiff testified that while sitting on the step she noticed its worn condition. She did not testify that said condition could not be observed by customers using the stairway. On the contrary, she testified that she had visited the store as a customer over a period of years and had no "difficulty in getting around for lack of light".

The daughter testified that after the injury she also noticed the worn condition of the step. She also did not testify that said condition could not be observed by customers using the stairway. On the contrary she testified that she also had visited the store as a customer over a period of years and could see "very plainly going about the stairway." The difficulty she had in finding the small articles dropped from the handbag is not evidence of insufficient light. All of us have had experiences of that kind. Furthermore, the landing and stairway were lighted by electric lights enclosed by large globes. Furthermore, the body of a person descending the stairway could not interfere with said lights, for they are in front of the person descending.

Plaintiff cites Capstick v. Sayman Products Co., 327 Mo. 1, 34 S. W. (2d) 480, and Busby v. Southern Bell Telephone Co., 287 S. W. 434.

In the Capstick case there was an issue of construction. The light was in the rear of a person descending the steps, and one descending "could hardly see the outlines of the steps."

In the Busby case there was evidence tending to show foreign substances on the steps, to-wit: soap and water.

We think there was no substantial evidence tending to show that defendants were not in the exercise of ordinary care in lighting the stairway. The judgment should be affirmed. It is so ordered. All concur.