Norman CAPOBIANCO, Plaintiff-Respondent,

v.

YACOVELLI RESTAURANT, INC.,
Defendant-Appellant.

No. 30990.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

———◆———

Alexander & Robertson, Ernest E. Baker, Louis A. Robertson, St. Louis, for defendant-appellant.

Flynn, Parker & Badaracco, Joseph L. Badaracco, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Defendant appeals from a verdict and judgment for $5,000 entered in favor of plaintiff for personal injuries and damages resulting from a fall on defendant's premises.

Defendant, a corporation, operates a restaurant located on Big Bend Road in St. Louis County. Plaintiff, a self-employed refrigeration and air-conditioning service man, had been taking care of the defendant's equipment for about ten years. On July 19, 1960, plaintiff went to the defendant's restaurant to install a new water pump adjacent to the water tower which supplied water to the defendant's two air-conditioning units. The water tower was located outdoors, in the southwest corner of a U-shaped court formed by the main brick building on the east, by two frame additions on the north and south, and by a picket fence on the west which ran from the northwest corner to the water tower. A stairway to the basement was located on the east side of the court, and so constructed that the walls of the stairwell were formed of the brick wall of the building on the east, and walls of eight inch concrete blocks on the south and west, with the concrete steps descending from the north. The steps and stairwell were entirely enclosed by wooden folding doors over the steps and by a wooden cover or platform over the remainder of the stairwell, such coverings having been constructed about five years previously. The doors were nailed shut, and the entranceway had not been in use for that period of time. The cover was from 3 to 4 feet wide, from the wall to the western edge, and was about a foot and a half or two feet above the ground. There was a window about 3 feet above the platform.

At the time plaintiff installed the water pump the restaurant had not yet opened for business for the day, and the only other person on the premises was one Hoppe, the porter, who was working inside. Plaintiff testified that after installing the pump, and aligning it visually, he desired to align it while it was in operation so as to achieve the least possible amount of vibration. There was no way to start the pump other than by throwing on the switch on either of the defendant's air-conditioning units in the building, which automatically activated the pump. Plaintiff said that he did not want to go into the building and throw on the switch because of the possibility that the pump might tear itself apart before he could return and properly align it. He decided to attract Hoppe's attention, and to ask him to throw on the switch. To that end, plaintiff testified, he stepped on the western edge of the platform over the stairwell, leaned forward with his left hand against the wall, and was about to knock on the window with his right hand when the boards forming the platform broke, causing plaintiff to fall about 7 to 8 feet to the bottom of the stairwell. Plaintiff said he had followed the same procedure on prior occasions when he wanted the porter to turn on a switch.

On direct examination by his counsel plaintiff was asked whether on any prior occasion or any other time before the fall he had ever been warned to stay off of the cover, and answered "Yes." However, an objection was made to the question, and sustained. Plaintiff was then asked whether Mr. Yacovelli had ever talked to him about the areaway when he had been there on any prior occasion, and replied that he had been

told " * * * to be careful of it," meaning the cover over the stairwell. On cross-examination his testimony regarding the warning given him was as follows:

"Q. There was no previous arrangement with Mr. Yacovelli with reference to using that cover as a step, was there?

"A. No.

"Q. In fact, or as a matter of fact, Mr. Yacovelli had warned you about the use of that cover on a previous occasion, didn't he?

"A. Yes.

"Q. And told you because of your —and I am not—I don't mean to be personal—but your height and weight, that that well might not carry you, didn't he?

"A. I don't believe that was specifically brought out. He just warned me in the use of it.

"Q. And what did he say to you?

"A. To be careful.

"Q. And what did you say to him?

"A. I don't remember. I probably acknowledged it.

"Q. Sir?

"A. I probably acknowledged it. I don't remember the words.

"Q. As a matter of fact, didn't Mr. Yacovelli tell you not to step up on that because of your weight?

"A. I don't remember it stated as such no.

*    *    *    *    *    *

"Q. Could you say the number of times you stepped up on there?

"A. Normally any time I had to service the tower I would step up on this.

"Q. And the only time that Mr. Yacovelli was there when he saw you step on there, he cautioned you about using that, didn't he?

"A. I don't believe I was standing on it when Mr. Yacovelli cautioned me. He just cautioned—

"Q. Cautioned you not to use it?

"A. That's right.

"Q. You were not even using it then but he cautioned you not to use is, is that right?

"A. I think so."

Plaintiff insisted that he had stood with both feet only on the edge of the cover that was supported by the concrete blocks, and denied that he had stepped on any other part of the cover or had started to walk over to the window.

On behalf of the defendant, its general manager, Dewey Yacovelli, testified that he could not remember when he advised the plaintiff not to step on the platform, but that he did recall he had told plaintiff " * * to be careful, that it was not made to walk on and it might not hold his weight." On cross-examination he stated that the warning had been given prior to the accident, on just one occasion because most times he wasn't there when the plaintiff was. He was asked how he happened to know that it was necessary to warn plaintiff, and replied:

"It wasn't built for that, it wasn't built to be walked on. I mean, it was strictly for cover, and he is quite heavy and I just figured that it wasn't the safest thing for him to do to be up there, so I warned him to stay off of it."

Subsequently he testified that he had seen plaintiff stand on the cover " * * * a few times," but whether he had warned plaintiff the first time he saw him stand on it or the second time he couldn't recall. He also stated that he stood on the cover on one occasion to repair a window broken by robbers, but that he had been quite careful not to step in the center section, and walked on the outer edge.

The opinion we have reached regarding defendant's initial point on appeal makes it unnecessary to recite the nature and extent of plaintiff's injuries and damages. That contention is that the court erred in overruling defendant's motion for a directed verdict at the close of the evidence because the plaintiff had failed to make a submissible case. The parties differ as to the status of plaintiff on defendant's premises at the place where he fell, plaintiff maintaining that he was a business invitee, and defendant arguing that plaintiff had become a mere licensee because he had exceeded the scope of the invitation extended to him by stepping on the stairwell cover after he had been told not to do so. Because of the view we take of the case it is unnecessary to rule this question, and for the purposes of this opinion we shall assume that plaintiff was a business visitor or invitee.

■ It is an elementary principle of the law of torts that there can be no actionable negligence in the absence of the existence of some duty on the defendant's part owing to the plaintiff, which duty has been neglected or violated by the defendant, with the injury suffered by the plaintiff directly attributable thereto, and flowing therefrom. Reichholdt v. Union Electric Company, Mo., 329 S.W.2d 634; Hiltner v. Kansas City, Mo., 293 S.W.2d 422. What duty, then, does a possessor of land owe to his business invitee? The law governing that subject is clearly set forth in 2 Restatement of the Law of Torts, Sec. 343, p. 938, as follows:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

■■ Thus the possessor of land owes his invitee the alternate duty to keep his premises in a reasonably safe condition *or* to warn him of the dangerous condition. But the possessor of land is not an insurer of the safety of his business invitee, Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, and, "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." 65 C.J.S. Negligence § 50, p. 541; Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 229, 74 A.L.R.2d 938; Dixon v. General Grocery Co., Mo., 293 S.W.2d 415; Small v. Ralston-Purina Co., Mo.App., 202 S.W.2d 533.

■ Thus the true basis of a landowner's liability is his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. Harbourn v. Katz Drug Co., supra; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468; Murray v. Ralph D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Stoll v. First National Bank of Independence, 345 Mo. 582, 134 S.W.2d 97. It was said in Stafford v. Fred

Wolferman, Inc., supra, 307 S.W.2d l. c. 473:

> " * * * Such a defendant is not liable for injuries due to dangers which are obvious, or as well known to plaintiff as to defendant. And in such circumstances there is no duty to warn because the invitee has the information which would be conveyed by a warning. Wattels v. Marre, Mo.Sup., 303 S.W.2d 9; Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756; Cameron v. Small, Mo. Sup., 182 S.W.2d 565; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723."

To the same effect see Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, 142 A.L.R. 858; Stoll v. First National Bank of Independence, 345 Mo. 582, 134 S.W.2d 97; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723; Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369; Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345; Goetz v. Hydraulic Press Brick Co., 320 Mo. 586, 9 S.W.2d 606, 60 A.L.R. 1064; Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278; Mullen v. Sensenbrenner Mercantile Co., Mo., 260 S.W. 982, 33 A.L.R. 176; Main v. Lehman, 294 Mo. 579, 243 S.W. 91; Heidt v. Lauless, Mo. App., 348 S.W.2d 599. It logically follows that if the invitee is in fact warned of the dangerous condition no liability can be maintained against the possessor of the land. Murray v. D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Paubel v. Hitz, supra; Main v. Lehman, supra.

■ In the instant case plaintiff readily admitted, on both direct and cross-examination, that prior to his fall Yacovelli had warned him about the danger of standing on the cover. In fact, had no warning been given, it might well have been argued that the care which plaintiff claimed he exercised to stand only on the edge amply illustrated his awareness of the obvious danger inherent in stepping on the platform. But in any event, here plaintiff's own evidence conclusively showed that the defendant was not guilty of any negligence because it had discharged its duty to plaintiff by warning him of the danger. Murray v. D'Oench Company, supra. Plaintiff attempts to escape the effect of the foregoing authorities by arguing, first, that he had continued to stand on the cover; and second, that he was not contributorily negligent in doing so. There was no evidence that Yacovelli or anyone else in authority was aware that defendant was continuing to stand on the cover after being warned not to do so; and even if there had been, there was no obligation on defendant to repeat the warning each time plaintiff did so. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 231, 74 A.L.R.2d 938. Secondly, as was said of a female business invitee in Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 657, 101 S.W.2d 723, 728, " * * * whether she was careful or not, or whether her conduct was contributory negligence or not, makes no real difference, because there is no evidence to show that defendant was guilty of any negligence, and, even if plaintiff was careful, defendant is only liable if it was negligent. * * *"

It follows that the court erred in overruling defendant's motion for a directed verdict, and that the judgment should be reversed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed.

ANDERSON, P. J., and WILLIAM M. KIMBERLIN and MARSHALL CRAIG, Special Judges, concur.