**Audrey Ann O'DELL and Paul O'Dell, Plaintiffs, Appellants,**

v.

**COOK'S MARKET, INC., Defendant, Respondent.**

No. 32914.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1968.

Ray B. Marglous, Clayton, for plaintiffs-appellants.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for defendant-respondent.

RUDDY, Judge.

Audrey Ann O'Dell, wife of Paul O'Dell was injured when she slipped and fell in defendant's store on either lettuce or cabbage leaves mixed with water. She and her husband jointly brought this action. She to recover damages for her injuries and he to recover for medical expenses and loss of consortium. A jury trial resulted in a verdict in favor of the wife in the sum of $1500 and in favor of the husband in the sum of $500. The trial court sustained defendant's motion for judgment in accordance with its motions for a directed verdict filed by it at the close of all of the evidence and entered a judgment in favor of defendant against plaintiffs. Plaintiffs appeal.

Mrs. O'Dell went to the store of the defendant in an automobile driven by her husband. Mr. O'Dell remained in the automobile and Mrs. O'Dell, her young son and her mother entered the store about 8:00 P.M. on June 16, 1965. It was the intention of Mrs. O'Dell and her mother to shop for their respective needs. Each procured a cart in which to put her purchases. There were not many customers in the store that evening. Mrs. O'Dell and her mother shopped through the various meat and grocery departments of the store as well as at the vegetable counter. Mrs. O'Dell did not believe that she purchased any of the vegetables. There were no customers in the vegetable department when they passed through. As they got to the vegetable counter in the course of their shopping tour Mrs. O'Dell noticed that the floor was wet in spots and that it had debris which she described as either lettuce or cabbage leaves. It covered an area of one square foot. At that time she saw the manager of the store and a clerk in the vegetable department. The mother of Mrs. O'Dell testified that she told her daughter to "'be careful' * * * 'it looks kind of messy in there.'" Her daughter did not respond to this admonition or say anything to her. Mrs. O'Dell testified that she did not remember her mother saying anything

to her and that she said nothing to her mother about the presence of the leaves and water on the floor at the time they first went through the vegetable department. Mrs. O'Dell was wearing a pair of low flat heeled shoes. She testified that the lighting was adequate and that she had no trouble seeing where she was going. About thirty minutes after she and her mother left the vegetable area they arrived at the checkout counter of the store where a clerk would compute the sum owed for the purchases made. While her mother's purchases were being computed Mrs. O'Dell remembered that she wanted to purchase an avocado for salad. She gave her mother her purse and told her to set it on the mother's cart while she went back to get the avocado. As she was going through the vegetable department on her way to get the avocado she slipped and fell. She testified, "I slid and I fell." Her leg folded under her and she fell in a sitting position. She testified that she knew she had fallen on something because she went down "too fast." After she had fallen she looked back from her sitting position to see what she had fallen on and she noticed a skid mark "that was either lettuce, or cabbage, mixed with water," and noticed some of the mixture on her left shoe. She described it as a green, slimy substance. She said it was all over the bottom of the sole of her left shoe. While she was sitting on the floor she saw a boy picking up leaves from the floor. He was about twelve to eighteen feet in front of her. When Mrs. O'Dell failed to return to the checkout counter her mother told Mrs. O'Dell's son to go back and see what happened to the mother. Upon learning from the boy of her daughter's fall she went to her daughter's assistance. She described the area at the time as "sort of damp, and a few little greens on the floor." The mother thought the condition of the floor was about the same as the first time she and her daughter went through the vegetable department. She saw what she described as lettuce on her daughter's left foot and that her daughter's slim jims were all green and wet.

Thereafter, Mrs. O'Dell's husband who had been called into the store picked up Mrs. O'Dell and carried her out to the automobile. Mr. O'Dell testified that when he looked at the floor he noticed it was wet and saw a lettuce leaf clinging to the sole of his wife's shoe. He noticed one of the young grocery clerks picking vegetable leaves off of the floor. He said the lighting conditions in the store were adequate at the time and he had no difficulty seeing where he was going. He said the store was well lighted. Mrs. O'Dell testified that when she returned to the vegetable department to obtain the avocado she observed no employees or customers in the vegetable department and when asked if there was anything to distract her she answered "No." When asked if there was anything to prevent her from seeing the lettuce leaves on the floor if she had looked she answered that she was not looking on the floor at the time but said there was nothing to prevent her from seeing the lettuce leaves on the floor had she looked. The manager of the store testified that between fifteen and thirty minutes before he learned of Mrs. O'Dell's fall he was in the vegetable area for the purpose of helping customers and checking supplies. He said he would have checked to see whether or not there was any debris on the floor. It was one of his responsibilities to look after the aisles. He was told by one of the clerks that Mrs. O'Dell had fallen and he went to where she had fallen and said he looked at the floor and saw nothing.

The cause was submitted to the jury on the alleged ground that defendant failed to use ordinary care to remove the wet lettuce or cabbage leaves on the floor after it knew or could have known of the unsafe condition and that Mrs. O'Dell did not know and could not have known of the unsafe condition of the floor.

Plaintiffs contend that the trial court erred in setting aside the jury verdict in favor of the plaintiffs and entering a judgment in favor of the defendant because the evidence shows that defendant had either

actual or constructive notice of the condition of the floor and was negligent in permitting the wet leaves to remain on the floor for a period of thirty minutes and further contends that Mrs. O'Dell was not contributorily negligent as a matter of law in failing to remember the presence of the leaves on the floor, which she had previously observed thirty minutes prior thereto. Defendant contends that her knowledge of the condition of the floor and her conduct in failing to avoid it constitutes contributory negligence as a matter of law.

Defendant admits that Mrs. O'Dell was an invitee who was injured on its premises. The Supreme Court in the case of Harbourn v. Katz Drug Company, Mo., 318 S.W.2d 226, 74 A.L.R.2d 938 has given the applicable rule governing liability to an invitee. It said (l.c. 228, 229):

"* * * the rule as to defendants' duty and liability to one in such status (invitee), as stated in 2 Restatement, Law of Torts, § 343, is as follows: 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm * * *.'"

The basis of defendant's liability is its superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. Harbourn v. Katz Drug Company, supra, l.c. 229. However, in order for defendant to fulfill its duty to plaintiff as an invitee it need not make repeated warnings. Harbourn v. Katz Drug Company, supra, l.c. 231.

Also, defendant had only the alternate duty either to remove the wet leaves that created the dangerous condition or to warn Mrs. O'Dell of the dangerous condition that existed on the floor. Defendant did not have the duty to both remove the leaves from the floor and to warn plaintiff of the dangerous condition. If defendant warned plaintiff of the condition or if plaintiff had the same knowledge of the condition as defendant there would be no liability on the part of defendant. Liability of an owner or occupant of premises is predicated on the owner or proprietor's superior knowledge of the dangerous condition and the danger therefrom to persons going upon the premises. It is only when the dangerous condition is known to the owner or occupant of the premises and not known to the person injured, that a recovery is permitted. It follows therefore that there is no liability by the owner or occupier of the premises for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant. Lamberton v. Fish, Mo., 148 S.W. 2d 544, l. c. 546.

In the instant case Mrs. O'Dell on her first trip past the vegetable counter thirty minutes before she fell saw that the floor was wet and that it had debris which she described as either lettuce or cabbage leaves on it. She said it covered an area of one square foot; her mother warned her to "'be careful,'" telling her, "'it looks kind of messy in there.'" Mrs. O'Dell did not deny that her mother warned her, she merely testified that she did not remember her mother saying anything to her. State ex rel. and to Use of Williams v. Feld Chevrolet, Inc., Mo.App., 403 S.W.2d 672, 683. The fact is that Mrs. O'Dell did admit that she saw the wet leaves on the floor and was fully aware of the dangerous condition of the floor at that time. While the evidence in this case does not show that defendant warned Mrs. O'Dell

of the condition of the floor, nevertheless, defendant is not liable for failure to warn Mrs. O'Dell because it was shown that Mrs. O'Dell had knowledge of the dangerous condition of the floor. She saw its dangerous condition thirty minutes before she fell. The source of the knowledge of Mrs. O'Dell is immaterial. The important fact is that she had as much knowledge of the condition as defendant had or was charged with. Trautloff v. Dannen Mills, Inc., Mo.App., 316 S.W.2d 866, 871. The lighting conditions were good; there were no customers in the vegetable department at the time Mrs. O'Dell fell and there was nothing to prevent her from seeing an obviously dangerous condition which she had observed thirty minutes earlier. Mrs. O'Dell was contributorily negligent as a matter of law.

However, Mrs. O'Dell seeks to escape the accusatory nature and effect of this knowledge by stating in her brief that she failed to remember the presence of the leaves on the floor when she returned to get the avocado thirty minutes later.

■■ The fact is that Mrs. O'Dell never did testify that she failed to remember or forgot about the presence of the leaves on the floor. No such testimony was ever given by her; but assuming, without so stating, that Mrs. O'Dell did forget, the rule of law in this state is that forgetfulness, when nothing has occurred to distract the mind, does not excuse. Clark v. Missouri Natural Gas Co., Mo., 251 S.W.2d 27, l.c. 30. In the case of Harbourn v. Katz Drug Co., supra, at page 231, the Supreme Court said: "It is unquestionably correct, and properly so, that generally an invitee who is aware of a dangerous condition cannot impose liability on the possessor of property because he momentarily forgot about it and was injured. Lamberton v. Fish, supra; 38 Am.Jur., Negligence, § 187; Annotation, 39 L.R.A.,N.S., 896." The court further said: " 'Circumstances may exist under which forgetfulness or inattention to a known danger may be con-

sistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger.' 65 C.J.S. Negligence § 120, pp. 726-727."

Were the circumstances in this case sufficient to excuse Mrs. O'Dell's forgetfulness, if in fact she did forget? She did not testify that she was in a hurry, nor was there anything to show that a condition arose suddenly which was calculated to divert her attention. She did not say that she was unaware of the location of the avocadoes. She did not say that she was focusing her attention on the vegetable stand. She did testify that there were no customers in the vegetable department at that time and that there was nothing to distract her and that she could have seen this condition on the floor, which was one foot square in area, had she looked. We find nothing in the evidence that was calculated to divert Mrs. O'Dell's attention from the obviously dangerous condition of the floor. No circumstances were shown to exist which would excuse her forgetfulness or inattention to the danger confronting her. Plaintiffs cite the case of Stocker v. J. C. Penney Co., Mo.App., 338 S.W.2d 339 in support of their position. The facts in that case may be distinguished from the facts of the instant case. In that case plaintiff saw a small dark object about the size of a plum as she was descending the steps of the store on the first trip down the steps and after a considerable shopping tour of the store that lasted approximately one hour and a half, she again descended the same steps and stepped in and was caused to fall by the deposit of gum on the stairway which had been on said step for at least one hour and a half. In the Stocker case plaintiff testified that she was not thinking of the spot as she descended the steps, stating that it had, "just slipped my mind." We upheld the judgment in favor of plaintiff pointing out that the defect or condition was not of such a

striking nature as would likely produce a lasting effect upon the mind of one observing it. In the instant case the condition that caused Mrs. O'Dell's fall was a glaringly dangerous condition. A much shorter period of time elapsed between the time Mrs. O'Dell saw it and the time of her fall than existed in the Stocker case. Also Mrs. O'Dell testified that she was not distracted.

We rule the trial court was correct in directing a judgment for the defendant. The judgment of the trial court is affirmed.

ANDERSON, P. J., and JAMES H. KEET, Jr., Special Judge, concur.