ATTORNEY FOR APPELLANT: Richard I. Woolf, Rebecca A. Anglo, Co-Counsel, Lisa Andreini Larkin, Co-Counsel, 100 North Broadway, 21st Floor, St. Louis, MO 63102, WILLIAMS, VENKER & SANDERS, LLC.
ATTORNEY FOR RESPONDENT: Kurt Joseph Larson, Brad Edward Miller, Co-Counsel, 3331 East Ridgeview Street, Springfield, MO 65804, LARSON LAW FIRM.
Honorable Mary K. Hoff
Kandlbinder, Inc., d/b/a ZX Convenience Store ("Kandlbinder") appeals from the judgment entered following a jury verdict in favor of Elizabeth Rhodes ("Rhodes") on her personal injury claim based upon premises liability and awarding her $480,000 in damages.[1] We affirm.
Factual and Procedural Background
On August 12, 2015, Rhodes was injured when she tripped and fell over a step at the entrance to a store operated by Kandlbinder. Rhodes filed suit against Kandlbinder alleging premises liability and negligence per se theories of recovery. David Rhodes, Rhodes's husband, joined in the suit and filed a loss of consortium claim.
During the 4-day trial, which commenced on June 28, 2017, Kandlbinder argued that it had not failed to use ordinary care in failing to remove the step, because it took measures it felt were "reasonable" in the circumstances, i.e. painting the step yellow. Conversely, Rhodes and her husband (collectively "the Rhodeses") argued that the presence of the step at the front door rendered Kandlbinder's convenience store not reasonably safe, and Kandlbinder failed to use ordinary care in failing to remove the step.
On July 1, 2017, following the close of all evidence and arguments by both sides, the jury returned a verdict in favor of Rhodes, finding that the step rendered the property not reasonably safe, and that Kandlbinder failed to use ordinary care in failing to remove the step. The jury assigned 20% fault to Rhodes and 80% fault to Kandlbinder and found that Rhodes's husband did not sustain any damages as a result of the injury to his wife.[2] On July 10, 2017, the trial court entered judgment in accordance with the jury's verdict wherein Rhodes received a net award of $480,000, after the application of the 20% fault attributed to her.
On August 9, 2017, Kandlbinder filed a motion for new trial arguing, inter alia , that the trial court erred in giving Instruction No. 7 and in denying Kandlbinder's proposed instruction, specifically paragraph "Third" of Instruction No. 7 that Kandlbinder "failed to use ordinary care to remove it" misstates Missouri law regarding *505 a premises owner's duties was not supported by the evidence, and contradicts the Notes on Use (1989 Revision) on the use of MAI 22.03. Kandlbinder also argued that the trial court erred in refusing to give Kandlbinder's proposed instruction based on MAI 32.29 regarding Rhodes's failure to mitigate her damages. On November 2, 2017, the trial court denied the motion. This appeal follows.[3] Additional facts necessary to the resolution of the issues on appeal will be discussed below.
Standard of Review
The trial court has broad discretion in deciding whether to grant a new trial. Hopfer v. Neenah Foundry Co., 477 S.W.3d 116, 123 (Mo. App. E.D. 2015). We review the trial court's denial of a motion for new trial for abuse of discretion. Hopfer, 477 S.W.3d at 123. "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful deliberate consideration." Id. (quoting State v. Stallings, 406 S.W.3d 499, 503 (Mo. App. W.D. 2013) ). We view the evidence in the light most favorable to the verdict and do "not consider matters such as the weight of the evidence, the credibility of the witnesses, or the resolution of conflicting testimony." Id. (quoting McGraw v. Andes, 978 S.W.2d 794, 805 (Mo. App. W.D. 1998) ).
Discussion
Kandlbinder's point on appeal challenges the propriety of the submission of Instruction No. 7 and the rejection of Kandlbinder's proffered instruction. Specifically, Kandlbinder contends that Instruction No. 7, as given, misstated the law and was unsupported by the evidence in that (1) under Missouri law, a premises owner may adequately warn of a hazard, as Kandlbinder did by painting the step yellow, without the need to remove the hazard, and (2) Instruction No. 7 prejudiced Kandlbinder and misled the jury by instructing the jury to assess liability only if they believed Kandlbinder "failed to use ordinary care to remove " the step and not offering an alternative instruction with the language "failed to use ordinary care to warn " of the step. Finding that no instructional error meriting a new trial was necessary in this case, we affirm.
The propriety of the instructions submitted to the jury is a question of law that we review de novo. Klotz v. St. Anthony's Medical Center, 311 S.W.3d 752, 766 (Mo. banc 2010). "Review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper." Klotz, 311 S.W.3d at 766. The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction. Hervey v. Missouri Dept. of Corrections, 379 S.W.3d 156, 159 (Mo. banc 2012). Instructional errors will be reversed only if the error resulted in prejudice that materially affected the merits of the action. Id.
MAI 22.03, which is the instruction regarding injured invitees, provides as follows:
22.03 [1995 Revision] Invitee Injured
Your verdict must be for plaintiff if you believe[1]:
First, there was (here describe substance on floor that caused the fall) on the floor of defendant's store and as a result the floor was not reasonably safe, and *506 Second, defendant knew or by using ordinary care[2] could have known of this condition, and
Third, defendant failed to use ordinary care[2] to [remove it] [barricade it] [warn of it][3] and
Fourth, as a direct result of such failure, plaintiff sustained damage.
* [unless you believe plaintiff is not entitled to recover by reason of Instruction Number___________________________________ (here insert number of affirmative defense instruction) ].
Notes on Use (1989 Revision)
1. Where comparative fault is submissible, modify this instruction in accordance with MAI 37.01. For submission of plaintiff's comparative fault for failure to keep a careful lookout, see MAI 32.28.
2. The phrase "ordinary care" must be defined. See definition at MAI 11.05.
3. Select one or more of these phrases. If more than one phrase is used, they must be submitted in the disjunctive and each must be supported by the evidence.
* Add if affirmative defense is submitted. This bracketed material should not be used to submit comparative fault. See MAI 37.01.
Here, Kandlbinder proffered and the trial court rejected an instruction based on MAI 22.03, as modified by MAI 37.01, which read as follows:
INSTRUCTION NO.______
In your verdict, you must assess a percentage of fault to defendant Kandlbinder, whether or not plaintiff Elizabeth Rhodes was partially at fault, if you believe:
First, there was a change in elevation from the parking lot to the threshold of the front entrance to defendant Kandlbinder, Inc.'s store between 1" to 3" and as a result the premises were not reasonably safe, and
Second, defendant knew or by using ordinary care could have known of this condition,
and
Third, defendant failed to use ordinary care to warn of the condition , and
Fourth, as a direct result of such failure, plaintiffs sustained damage. (sic) Unless you believe plaintiff is not entitled to recovery by reason of instruction Number___.
[Emphasis added.]
Kandlbinder did not offer an instruction including "failure to warn" and "failure to remove" in the alternative. Kandlbinder also failed to offer an instruction providing a definition for the phrase "ordinary care." Conversely, the Rhodeses proffered, and the court ultimately submitted as Instruction No. 7, the following instruction based on MAI 22.03, as modified by MAI 11.05, MAI 19.01, and MAI 37.01, which read as follows:
INSTRUCTION NO. 7
In your verdict you must assess a percentage of fault to defendant, whether or not plaintiff Elizabeth Rhodes was partly at fault, if you believe:
First, there was a step at the front door at defendant's convenience store and as a result the convenience store was not reasonably safe,[4] and
Second, defendant knew or by using ordinary care could have known of this condition, and *507 Third, defendant failed to use ordinary care to remove it , and
Fourth, said condition directly caused or directly contributed to cause damage to plaintiff Elizabeth Rhodes.
The phrase "ordinary care" as used in these instructions means that degree of care that an ordinarily careful person would use under the same or similar circumstances.
[Emphasis added.]
During the jury instructions conference, Kandlbinder objected to Instruction No. 7 arguing it was error to modify MAI 22.03 in accordance with MAI 19.01, and not including "failure to warn" in the disjunctive. The relevant exchange regarding the submission of Instruction No. 7 is provided below:
THE COURT: So 7 then is Plaintiffs' 22.03 including the definition of ordinary care. That is over objection.
[COUNSEL FOR KANDLBINDER]: Yes, Your Honor. May I real quickly just briefly state on the record the two points that we state for objection on that?
We believe that the giving of 19.01 in that-in this particular instance is error as well as the removal-or not doing the disjunctive with failure to warn.
THE COURT: And you submitted an instruction-
[COUNSEL FOR KANDLBINDER]: That was pure 22.03 on the failure to warn.
THE COURT: If I can find it back. It was objected to, and now I'm not getting ahold of it. Do you have a copy of it that I can include in the court record?
[COUNSEL FOR KANDLBINDER]: Let me find it, Your Honor. Here it is.
THE COURT: So show that as submitted by [Kandlbinder] and rejected.
When examining whether there was substantial evidence to support the submission of an instruction, this Court is to only consider the evidence supporting the submission and disregard all other evidence. Klotz, 311 S.W.3d at 766. Here, the Rhodeses offered substantial evidence for the jury to find that Kandlbinder failed to use ordinary care in removing the step. The evidence presented at trial supported submission of Instruction No. 7, and specifically the submission of the third paragraph stating that "Kandlbinder failed to use ordinary care to remove it." Moreover, the Rhodeses presented substantial evidence that the step, including the yellow paint, rendered the property not reasonably safe and that Kandlbinder's failure to remove the step was negligent.
The Rhodeses offered testimony from numerous witnesses, including prior fall victims, former employees, and current employees regarding incidents and falls caused by the yellow painted step at the entrance to Kandlbinder's convenience store.
Specifically, the Rhodeses offered the testimony of two witnesses, Dixie Angell ("Angell"), a customer, and Judy Hopkins ("Hopkins"), a former employee, who tripped over the yellow step, were injured, and who testified that they never saw the yellow step before their fall. Based on the dates of their falls, it is undisputed that the step was painted yellow at the time of their injuries.
In addition, there was testimony from former and current employees regarding falls that either did not result in injury or were not reported to management. Hopkins, for example, testified that she witnessed a customer on the ground just inside the front door, and assumed that the customer had fallen at the front entrance. A current employee, Yvonne Schickler, *508 testified that she saw a woman fall, and chip her tooth on a product display just inside the front door of the convenience store. Another current employee, Holly Tyree, testified that she previously "heard a thump," and "saw a lady down" at the front of the store near the front door, while another current employee, Joseph Kandlbinder, testified he recalled having to obtain two or three surveillance videos of people falling at the front door of the store.
In addition to the prior falls, current and former employees also testified that people would frequently catch their foot on the step and stumble. Christin Nixon, a former employee, initially testified that during her time as an employee at the ZX store, it was a "daily occurrence" that someone would stub their toe on the step leading into the store.
In addition to the substantial evidence that despite efforts taken to paint the step yellow, the step continued to present a hazard, and that Kandlbinder failed to exercise ordinary care in failing to remove it, the Rhodeses also offered the testimony of two experts regarding efforts necessary to remove the hazard. Dr. Alan Davison ("Dr. Davison"), an expert in the fields of human factors and systems safety, testified that the yellow paint, from a human factors perspective, would be ineffective in bringing customers attention to the step. Dr. Davison also testified, from a systems safety perspective, this hazard could be easily removed, and it should have been removed in this case. Dr. Davison testified that other less expensive and burdensome options existed to remove the hazard, for example that Lowe's sold an inexpensive metal ramp for $133 that could be installed in ten minutes or less, and would not require any concrete work.
Earl Newman ("Newman"), an engineer, who worked for 29 years as the traffic safety engineer for the City of Springfield, Missouri. Newman offered two engineering drawings that represented the "best options" and represented what actions Kandlbinder should have been undertaken to remove the tripping hazard.
Kandlbinder testified through its corporate representative that it was aware of at least one additional fall prior to Rhodes's fall, but after the step was painted yellow.
Despite the plethora of evidence presented, Kandlbinder argues that it had the option to either (1) warn of the condition or (2) remove the condition, regardless of whether this made the property reasonably safe. However, this is not consistent with Missouri law. The duty owed by a premises owner to an invitee under Missouri law is clear that in a premises liability case "a plaintiff must show that the defendant ... failed to use ordinary care to remove it, barricade it, or warn of it...." Porter v. Toys 'R' Us-Delaware, Inc., 152 S.W.3d 310, 316 (Mo. App. W.D. 2004) (citing Emery v. Wal-Mart Stores, Inc., 976 S.W.2d 439, 443-44 (Mo. banc 1998) ). In other words, in Missouri, the ultimate duty required of a landowner is to ensure that the premises are reasonably safe, whether through warning, barricades, or removal. Porter, 152 S.W.3d at 316 ; see Woodall v. Christian Hospital NE-NW, 473 S.W.3d 649, 653 (Mo. App. E.D. 2015) (a landowner owes a duty to use reasonable and ordinary care to prevent injury to invitees either by removing or warning of the danger); see also Ryan v. Rademacher, 142 S.W.3d 846, 849 (Mo. App. E.D. 2004) (possessor of land owes duty to invitee, one who the possessor invites onto the premises with the expectation of a material benefit from the visit, to exercise reasonable and ordinary care to make premises safe). As such, Instruction No. 7 correctly stated the law in Missouri *509 with regard to premises liability and an injured invitee.
Kandlbinder insists that once it painted the step yellow, it had no additional duty to make the premises reasonably safe. However, Missouri law is clear that a warning, in and of itself, can render a property not reasonably safe, and subject the property owner to liability. See Rycraw v. White Castle Systems, Inc., 28 S.W.3d 495, 499-500 (Mo. App. E.D. 2000) (finding that a warning cone, based on the facts of the case, was actually a dangerous condition); see also Luthy v. Denny's Inc., 782 S.W.2d 661, 663 (Mo. App. W.D. 1989) (finding that cone to warn about wet floor was dangerous condition in any area of known congestion). Missouri law is clear that not all attempts to provide a warning absolve the property owner from liability.[5] Under certain circumstances, like the present one, a premises owner must do more than simply warn about a dangerous condition; it must take action to "remedy" the unsafe condition. Pierce v. Platte Clay Electric Coop., 769 S.W.2d 769, 777 (Mo. banc 1989).
Here, it was the Rhodeses' theory of recovery that the step, despite being painted yellow, was a dangerous condition that required removal. This is consistent with Missouri law that "[a] plaintiff is entitled to choose the theory of recovery on which to submit his case to the jury as long as there is sufficient evidence to support him." Coleman v. Meritt, 292 S.W.3d 339, 343 (Mo. App. S.D. 2009) (citing Yoos v. Jewish Hosp. of St. Louis, 645 S.W.2d 177, 191 (Mo. App. E.D. 1982) ). Additionally, a party is entitled to a verdict-directing instruction predicated on its theory of the case, if that theory is supported by the evidence. Coleman, 292 S.W.3d at 343 (citing Adams v. Badgett, 114 S.W.3d 432, 436 (Mo. App. E.D. 2003) ).
The phrase "ordinary care" is defined as "that degree of care that an ordinarily careful person would use under the same or similar circumstances." MAI 11.05. Therefore, the jury was not just required to find that Kandlbinder failed to remove the step, but also that the failure to remove the step fell below "that degree of care that an ordinarily careful person would use under the same or similar circumstances."
In addition to finding that the failure to remove the step was negligent, the jury was also required to find that the yellow step rendered the property not reasonably safe. MAI 22.03 provides three options that can be used in the third paragraph: "remove it," "barricade it," or "warn of it." The "notes on use" section regarding MAI 22.03 clearly provides that "[i]f more than one phrase is used, they must be submitted in the disjunctive." Missouri law states that when issues are submitted in the disjunctive, "each alternative claim of negligence must be able to stand alone and there must be sufficient evidence to support each allegation." Banther v. Drew, 171 S.W.3d 119, 122 (Mo. banc 2005) ; BMK Corp. v. Clayton Corp., 226 S.W.3d 179, 189 (Mo. App. E.D. 2007). Stated differently, "[i]f there is not substantial evidence for each disjunctive element, the submission of the entire instruction *510 is in error." Banther, 171 S.W.3d at 122. In determining whether the instruction is supported by substantial evidence, this Court must consider the evidence in the light most favorable to the plaintiff and disregard the defendant's evidence unless it tends to support the submission of the instruction. Id.
Here, the Rhodeses presented substantial evidence to submit their theory that Kandlbinder failed to use reasonable care to remove the step. However, Kandlbinder's proposed instruction included "failure to warn" to the exclusion of "failure to remove." This failure to instruct in the disjunctive would have prejudiced the Rhodeses, and resulted in reversible error.
In arguing that the refusal to instruct the jury in the disjunctive was prejudicial to Kandlbinder, it cites to Ploch v. Hamai, 213 S.W.3d 135 (Mo. App. E.D. 2006). In Ploch, the plaintiff in a medical malpractice case tendered an instruction with multiple theories of negligence offered in the disjunctive. Ploch, 213 S.W.3d at 138. The trial court rejected the instruction and instead submitted the defendant's proposed instruction, which included all of the disjunctive theories of negligence, other than the allegation that the defendant "failed to read the nurse's notes before discharging Plaintiff ..." Id. On appeal, this Court found that it was reversible error for the trial court to fail to give the instruction because it was supported by the evidence. Id. at 139-40. However, as the Rhodeses correctly point out, Ploch provides no support for Kandlbinder's position because there, in contrast to here, the disjunctive instruction was offered by the plaintiff, and refused by the court. Id. at 138. Therefore, in Ploch, the plaintiff was prejudiced by the refusal of the trial court to give disjunctive instructions, which would provide an additional option for the jury to find in the plaintiff's favor. The trial court did not err in refusing to submit Kandlbinder's erroneous proffered verdict director. SKMDV Holdings, Inc., v. Green Jacobson, P.C., 494 S.W.3d 537, 556 (Mo. App. E.D. 2016) ("[I]t is basic that it is not err for a trial court to refuse to give a requested instruction which is incorrect"). Moreover, there is no duty imposed on a trial court to draft a proper instruction when the parties fail to submit a correct instruction. Cluck v. Union Pacific R.R. Co., 367 S.W.3d 25, 34 (Mo. banc 2012) ("[A]lthough a party is entitled to have its own instruction submitted to the jury if it is correct, this entitlement does not impose a duty on the trial court to draft a proper instruction when the parties fail to submit a correct instruction").
Here, based on the evidence presented at trial, the jury found that even though the step was painted yellow as a warning, this measure was insufficient to render the property reasonably safe. Therefore, as submitted, Instruction No. 7 was supported by the evidence and accurately stated the law of Missouri. The trial court did not err in allowing the submission of Instruction No. 7 and in refusing Kandlbinder's proposed verdict director, as it misstated the law. Finally, the trial court did not err in failing to instruct in the disjunctive as Kandlbinder never proffered such an instruction and the trial court had no duty to draft a proper instruction on Kandlbinder's behalf. Point denied.
Conclusion
The Judgment is affirmed.
Philip M. Hess, Presiding Judge and Kurt S. Odenwald, Judge: Concur

The jury assessed Rhodes's damages to be in the amount of $600,000, resulting in a net award to Rhodes, after the application of 20% fault to her, of $480,000.

The negligence per se claim was dismissed during trial and the matter was submitted to the jury only on the premises liability theory, with the parties disputing whether Kandlbinder had exercised ordinary care in warning of the "dangerous" condition or whether ordinary care required removal of the condition.

The Rhodeses' motion to dismiss taken with the case is denied.

We note that paragraph one of Instruction No. 7, wherein the jury had to find that the dangerous condition rendered the premises "not reasonably safe," implied that the attempt to warn was insufficient. Based on this finding, the jury then was able to conclude, under paragraph three, that Kandlbinder failed to exercise ordinary care to "remove" the step.

In support of its argument, Kandlbinder relies on O'Dell v. Cook's Market, Inc., 432 S.W.2d 382 (Mo. App. 1968). In O'Dell, the Court was interpreting the law regarding a premises owner's duty to invitees as stated in the First Restatement of Torts § 343. However, Missouri has now adopted the Second Restatement of Torts § 343, which requires that the property owner's duty is to "exercise reasonable care to protect [invitees] against danger." See Harris v. Niehaus, 857 S.W.2d 222, 226 (Mo. banc 1993) ("We adopt §§ 343 and 343A(1) [of the Restatement Second] as accurate statements of the law of Missouri.").